IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOHN PATRICK BRIGGS, | § | |
| | § | 3:24-cv-293 |
| *Plaintiff,* | § | Case No. _____ |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| COUNTY OF EL PASO, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

## COMPLAINT

Plaintiff John Patrick Briggs ("Briggs) brings this action against Defendant the County of El Paso, Texas ("County of El Paso") under 42 U.S.C. § 1983 and states as follows:

## I.
## PARTIES

1.    Plaintiff, Briggs, is an individual and a resident of El Paso County, Texas.

2.    Defendant, County of El Paso, is a governmental entity in the State of Texas upon which service may be obtained by serving the El Paso County Judge, Ricardo A. Samaniego, 500 E. San Antonio, Suite 301, El Paso, Texas 79901, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Title 42 of the United States Code.

4.    Venue is proper in this District under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Briggs's claim occurred in this District.

**III.**
**SUMMARY OF THE CASE**

5.     Yvonne Rosales ("Rosales") was a colossal disaster as the El Paso County District Attorney. Her brief tenure was indelibly marred by incompetence and scandal so pervasive that it eventually culminated with her resignation, but only after she invoked her Fifth Amendment right against self-incrimination when asked to explain her actions. Her resignation finally quieted growing cries for her removal from office, including a largely unprecedented legal proceeding seeking to force that very outcome.

6.     Her resignation was hardly voluntary. To the contrary, as Rosales tried to dodge responsibility for her own decisions, she and an inner-circle of advisors forced Briggs out of the El Paso County District Attorney's Office (the "DA's Office") after he refused to cooperate with an illegal scheme Rosales and her advisors had concocted.

7.     Briggs was promptly and abruptly terminated, temporarily ending an otherwise stellar career as a prosecutor previously marked by exemplary performance reviews and a steady track record of promotion. His termination was widely reported in news stories across the state, all part of the plan Rosales and her advisors had to deflect attention elsewhere—no matter the legality or the personal cost to Briggs.

8.     Eventually, however, Rosales could dodge no longer, and as new leadership emerged in the DA's Office, Briggs was promptly rehired and, in fact, promoted. Briggs proudly serves as a prosecutor in that office today. But he should have never been terminated in the first place, and neither the illegality of that termination nor the resulting indignities and damages are tolerated under federal law.

**IV.**
**<u>FACTS</u>**

9.      Briggs is a well-respected and highly regarded career prosecutor with more than 25 years

of experience working in the DA's Office.

10.     Following his termination in August 2022 and a short stint working in the Ector County

DA's Office, Briggs was rehired in February 2023.

11.     Briggs currently works in the DA's Office as Assistant District Attorney, Division Chief

(Trial Division) under the direction of El Paso County District Attorney Bill D. Hicks ("Hicks").

12.     Briggs is a 1992 graduate of Stanford University, where he earned a Bachelor of Arts in

Political Science, and a 1995 graduate of Baylor University School of Law, where he earned a

Juris Doctor (J.D.). Briggs has been a member of the State Bar of Texas since November 3, 1995.

His record with the State Bar of Texas is spotless.

13.     Briggs joined the DA's Office in September 1997. Over the years, Briggs worked through

the ranks and held the position of Assistant District Attorney, Trial Team Chief, when he was

wrongfully terminated on August 22, 2022.

14.     While the position of El Paso County District Attorney is an elected State position, all

others working in the DA's Office are employees of the County of El Paso. Therefore, at the time

Briggs was wrongfully terminated, he was an employee of the County of El Paso.

15.     The events that led to Briggs's wrongful termination demonstrate a politically-motivated

scheme by then-District Attorney Rosales and her cronies to involve Briggs, unwittingly,  in the

coverup of their wrongdoing, following the violation of a July 1, 2022 "gag order." State District

Court Judge Sam Medrano ("Judge Medrano") issued the gag order in the high-profile Walmart

mass shooting case, *State of Texas v. Patrick Crusius*, Cause No. 20200D02631, in the 409th

Judicial District Court, El Paso County, Texas (the "Crusius Case").

16.     Rosales was elected in 2020 and assumed the office of El Paso County District Attorney on January 1, 2021, after her predecessor, Jaime Esparza, had held the position for nearly thirty years. Rosales left office on December 14, 2022.

17.     Events leading up to Rosales' resignation are well-documented in the press. On October 10, 2022, about one month before Rosales resigned, the Texas Tribune reported online that "Chaos surrounding rookie El Paso DA Yvonne Rosales fuels concerns about Walmart massacre prosecution":[1]

> The office of El Paso County District Attorney Yvonne Rosales should be readying itself for one of the most high-profile murder trials in recent Texas history — seeking a death sentence for the man accused in a racist massacre at a local Walmart that took the lives of 23 people.
>
> No state trial date has been set in the 2019 mass shooting, the case delayed at least in part by the pandemic and ensuing court backlogs. But now many are questioning whether the rookie district attorney is capable of prosecuting it at all.
>
> During her first two years, Rosales has found herself engulfed in accusations of incompetence and scandal as her office appears unable to fulfill some of its most basic responsibilities.
>
> Local judges have thrown out hundreds of criminal cases after her office failed to meet court deadlines. In one exceedingly rare court ruling, a judge freed a murder defendant after finding that Rosales' office vindictively pushed for a death sentence because it had been caught unprepared to go to trial.
>
> Omar Carmona, the attorney who represented the freed man, has filed a legal petition seeking to remove Rosales from office through a rarely used process in state law allowing local elected officials to be ousted for incompetence or misconduct. A judge has signed off on moving forward with the proceeding.

---

[1]   https://www.texastribune.org/2022/10/10/el-paso-shooting-yvonne-rosales-district-attorney/?utm_campaign=trib-social-buttons&utm_source=email&utm_medium=social (last visited on August 19, 2024).

> The chaos has raised concerns for the rights of both victims and defendants in El Paso County, and for the safety of the community itself.
>
> Now the drama surrounding the county's top prosecutor is seeping into the Walmart shooting prosecution. Rosales' office and the judge presiding over the case have clashed in open court, and she has unsuccessfully tried to have him removed, feeding fears that the community's most prominent criminal case is being mishandled.

18.     On November 28, 2022, the *Texas Tribune* reported online that Rosales had resigned:[2]

> Facing possible removal from office over accusations of incompetence and misconduct, El Paso District Attorney is stepping down.
>
> The rookie prosecutor on Monday submitted her resignation effective Dec. 14, the day before a judge was expected to decide if she should be suspended pending a trial that could oust her from office before her term ends in 2024. During her nearly two years in office, Rosales has been engulfed in a series of scandals over her handling of the border county's prosecutions.
>
> Rosales became district attorney of El Paso, Culberson and Hudspeth counties in 2021 after her predecessor had held the post for nearly three decades. After spending most of her legal career practicing family law, her electoral win placed her in charge of prosecuting the alleged gunman in El Paso's 2019 Walmart massacre, one of the most high-profile death penalty cases in recent Texas history.

19.     The *El Paso Times* reported online on November 28, 2022 that Rosales' resignation "came to light during an in-person hearing in El Paso's 346th District Court ahead of a Wednesday hearing regarding the violation of the gag order issued in the Walmart shooting case."[3]

---

[2] https://www.texastribune.org/2022/11/28/el-paso-district-attorney-yvonne-rosales-resigns/?utm_campaign=trib-social-buttons&utm_source=email&utm_medium=social (last visited on August 19, 2024).

[3] https://www.elpasotimes.com/story/news/2022/11/28/el-paso-district-attorney-yvonne-rosales-resigns-governor-greg-abbott-will-appoint-replacement/69683931007/ (last visited on August 19, 2024).

20.     The *El Paso Times* also reported online on December 14, 2022 that "Rosales enjoyed a meteoric rise to become the first woman elected district attorney, the region's top law enforcement official. Her fall from grace was equally eye-catching."[4] According to the publication:

> Within the past year, Rosales would see her political career collapse under the threat of forced removal. A judge had hinted he would suspend her from office while an aggressive campaign to remove her quickly moved to trial.
>
> Rosales' historic resignation spared her from the public humiliation of possibly being officially found incompetent and unfit to hold office.

21.     Briggs was the victim of Rosales' political ambition and efforts by Rosales and her cronies to cover up for the DA's Office's involvement in the violation of a gag order in the Crusius Case.

**The Crusius Gag Order and Emails Sent to the Press**

22.     On June 27, 2022, Rosales issued a press release stating among other things that she hoped to try the Crusius Case in the summer of 2023.

23.     On June 28, 2022, Judge Medrano set the Crusius Case for a status hearing on July 1, 2022. This was the first court setting in the Crusius Case since Rosales took office on January 1, 2021, and the first hearing since Briggs was on the case.

24.     On July 1, 2022, prior to the scheduled hearing, Judge Medrano issued an *Order Restraining Parties from Making Extrajudicial Statements (Gag Order)* (the "Gag Order").

25.     During the July 1, 2022 hearing, Judge Medrano admonished Rosales for making public comments about the case. The hearing transcript is a matter of public record.

26.     Following the July 1, 2022 hearing, some of the surviving victims and families of deceased victims in the Crusius Case gathered in the large conference room at the DA's Office.

---

[4] https://www.elpasotimes.com/story/news/local/el-paso/2022/12/14/el-paso-district-attorney-yvonne-rosales-steady-rise-and-rapid-fall/69713440007/ (last visited on August 19, 2024).

27.    Briggs reassured the group that the case was on track and the DA's Office would be ready for trial. Briggs also informed the group that Judge Medrano had issued a gag order, which meant they were not allowed to speak publicly about the Crusius Case. Briggs informed the group that if they violated the Gag Order, they could be held in contempt of court and possibly be put in jail.

28.    After Briggs spoke to the group, Rosales' legal advisor Rogelio "Roger" Rodriguez ("Rodriguez") began addressing the room. Rodriguez criticized Judge Medrano, told the group they were going to get the judge recused, and encouraged the families to file complaints with the judicial ethics commission. Rosales stood by as Rodriguez spoke to the group. Rodriguez was never employed by the DA's Office, yet he was seemingly ever-present including in highly-confidential and privileged discussions.

29.    Briggs interrupted Rodriguez, expressed his disagreement with the filing of frivolous complaints, and told the group there was no basis to recuse Judge Medrano. When Rodriguez began to argue with Briggs, Briggs disengaged because he did not want to argue in a room full of victims and victims' families. Again, Rosales stood by as Rodriguez continued to address the group.

30.    Rosa Maria Valdez Garcia (the widow of deceased shooting victim Alexander Hoffmann) and her two sons, Alexander and Thomas Hoffmann (collectively, the "Hoffman family"), were present at the July 1, 2022 hearing and at the meeting in the DA's Office.

31.    Over the next weekend, Briggs ran into First Assistant District Attorney George Al-Hanna ("Al-Hanna") at Costco. They discussed the July 1, 2022 meeting with the families, and Briggs shared his concerns about the meeting and Rodriguez. Briggs told Al-Hanna that he would no longer be attending any Crusius Case meetings at which Rodriguez was present.

32.     On July 15, 2022, Al-Hanna informed Briggs that he was being removed from the Crusius Case.

33.     On August 3, 2022, the third anniversary of the Walmart shooting, former prosecutor Amanda Enriquez ("Enriquez") gave a news interview about the Crusius Case. Rosales had not retained Enriquez when she took over the DA's Office, and Enriquez was not bound by the Gag Order. Enriquez was expected to challenge Rosales for the District Attorney's position in the next election cycle.

34.     On August 4, 2022, the local media received an email purporting to be from the email account of Rosa Maria Valdez Garcia and signed by "Alexander Hoffmann Valdez" (the "August 4, 2022 Email"). The email referenced the Crusius Case and criticized Enriquez as "unprofessional, inadequate, and cold."

35.     The "to:" line for the email contained the email addresses used for the DA's Office's press releases, and the email read like it had been written by someone in, or associated with, the DA's Office.

36.     On August 5, 2022, Elise Hoffmann-Taus, the daughter of shooting victim Alexander Hoffmann, sent out an email stating that her brother Alexander could not have written the August 4, 2022 Email: "I, the next of kin of Alexander Hoffmann, do NOT believe this was written by my brother, nor any of my family members. Not only is Alexander Hoffmann not fluent and eloquent in the English language, but he lacks the capabilities of writing such emails."

37.     On August 10, 2022, Judge Medrano held a meeting in Chambers. Briggs attended the meeting to keep up appearances so the defense counsel did not learn that the only person remaining in the DA's Office with death penalty experience (Briggs) had been removed from the case. Judge

Medrano wanted to know if the Hoffmann family was present at the July 1, 2022 hearing, if they had been informed of the Gag Order, and by whom.

38.     Judge Medrano set the case for a hearing to take place on August 18, 2022, and asked the DA's Office to summon the Hoffmanns to appear at the hearing.

39.     On August 17, 2022, Judge Medrano appointed Justin Underwood ("Underwood") as attorney ad litem to represent the Hoffmann Family in relation to a possible violation of the Gag Order.

40.     On August 17, 2022, Assistant District Attorney and Senior Division Chief Sanford Curtis Cox ("Cox") filed a motion for continuance of the August 18, 2022 hearing, stating that "the State has not yet succeeded in making contact with Rosa Maria Valdez Garcia, Alexander Wilhelm Hoffmann, or Thomas Hoffmann."

41.     This was a fallacy intended to delay the hearing so that Rosales and her cronies could buy time to pursue a Motion to Recuse Judge Medrano.

**The False Affidavit and Briggs's Wrongful Termination**

42.     On August 18, 2022, Cox came into Briggs's office late in the afternoon, handed Briggs an affidavit, and instructed Briggs to sign the affidavit.

43.     Among other misleading statements, the affidavit stated that Briggs had not adequately informed the Hoffmanns of the Gag Order—all of which was false.

44.     Briggs refused to sign the affidavit or to agree to be part of an effort to deflect attention away from Rosales.

45.     At that time, Briggs told Cox that he thought the August 4, 2022 Email came from the DA's Office and Rodriguez.

46.     Once he refused to cooperate in the illegal scheme, Briggs was marked for termination.

47.     The next day, on August 19, 2022 (a Friday), Division Chief Scott Ferguson ("Ferguson") drafted Briggs's annual performance evaluation. Although Briggs had consistently received favorable, if not glowing, evaluations during his near 25-year tenure at the DA's Office, this time Ferguson intentionally "tanked" Briggs with an unfavorable evaluation. Ferguson emailed the evaluation to Cox, Al-Hanna, and Rosales.

48.     Briggs did not receive a copy of the evaluation from Ferguson, nor did anyone sit down and go through the evaluation as is customary. Under normal circumstances, Briggs would have been asked to sign the evaluation and been given ten days to respond in writing to any issues in it. Briggs only obtained a copy of Ferguson's evaluation through a Public Information Act request after his termination.

49.     Briggs subsequently learned that on the morning of August 22, 2022, Al-Hanna altered Ferguson's evaluation of Briggs and sent the altered evaluation to Rosales. Al-Hanna intentionally lowered Briggs's score, removed references to specific case names, echoed fictional criticisms of Briggs, and made the comments harsher. Once again, Briggs did not receive a copy of the evaluation or review the evaluation with a supervisor, as is customary. Briggs obtained a copy of Al-Hanna's revised evaluation through a Public Information Act request.

50.     After the performance evaluation was concocted and altered, Cox informed Briggs midday on August 22, 2022 that he was being terminated, and Briggs was escorted out of the office.

**The DA's Office's Failed Efforts to Recuse Judge Medrano**

51.     On September 9, 2022, the DA's Office filed a Motion to Recuse Judge Medrano from the Crusius Case (the "Motion to Recuse"). The matter was set for a September 27, 2022 hearing.

52.     On September 27, 2022, Briggs testified at the hearing on the Motion to Recuse.

53.     During closing arguments, the DA's Office argued that the July 1, 2022 Gag Order was unconstitutional—even though the DA's Office never challenged it in court—and criticized Judge Medrano's appointment of Underwood as ad litem. The DA's Office also criticized Judge Medrano for his treatment of Rosales, accusing him of personal animus, political opposition, and bias of gender.

54.     Following the close of testimony, presiding Judge Sid Harle ruled that there was no basis to recuse Judge Medrano and denied the Motion to Recuse. The hearing transcript and Judge Harle's order are matters of public record.

**<u>The Retaliatory Grievance Filed Against Briggs</u>**

55.     On September 23, 2022, four days before Briggs was scheduled to testify at the hearing on the Motion to Recuse, a Grievance was filed against Briggs with the State Bar of Texas. The Grievance was signed by Al-Hanna and filed with the Office of the Chief Disciplinary Counsel of the State Bar of Texas.

56.     Although the Grievance was entirely without merit and was intended solely to intimidate and punish him, Briggs engaged an attorney to defend him.

57.     During a conversation with the attorney representing Briggs in the Grievance, Al-Hanna admitted that he did not draft the Grievance, but that he just signed and filed it.

58.     The State Bar of Texas did not pursue the Grievance, and the matter was eventually dropped.

59.     Briggs maintains a spotless record with the State Bar despite the efforts of Rosales and her cronies to the contrary.

60.     Al-Hanna and the DA's Office intentionally filed the baseless Grievance on September 23, 2022—four days before Briggs was set to testify at the September 27, 2022 hearing on the Motion to Recuse—in order to intimidate and harass Briggs and cause him reputational harm.

**The Ad Litem Report: The Truth Comes Out**

61.     On October 6, 2022, Underwood filed the Report of Ad Litem (the "Ad Litem Report") in the Crusius Case.

62.     The Ad Litem Report detailed the results of Underwood's investigation into the August 4, 2022 Email purportedly sent by the Hoffmanns to the local media, exposed Rodriguez's and the DA's Office's involvement, and described their subsequent efforts to cover-up their involvement.

63.     Among the stunning revelations in the Ad Litem Report were that:

    a.  "The email was sent from an email address associated with Mrs. Rosa Maria Valdez Garcia, the mother of Alexander Hoffmann and Thomas Hoffmann (collectively, 'the Hoffmann family').… The email was sent by Mrs. Valdez' cell phone. However, Anne Rodriguez, the wife of Roger Rodriguez, working for the Office of the District Attorney, used Mrs. Valdez's cell phone to compose and send the emails with the assistance of Roger Rodriguez. Anne Rodriguez requested to use Thomas Hoffmann's cell phone to send the emails and he refused so Anne and Roger Rodriguez used Mrs. Valdez' cell phone to send the emails. Mrs. Valdez had no knowledge of what the emails contained or where they were being sent."

    b.  "On August 18, 2022, ADA Cox filed a verified Motion to Continue in which he stated that 'the State has not yet succeeded in making contact with Rosa Maria Valdez Garcia, Alexander Willhelm Hoffmann, or Thomas Hoffmann.… Interestingly, Roger Rodriguez told the Hoffmann family that they would receive a phone call from the

District Attorney's Office at noon on Monday and he further instructed the Hoffmanns not to answer that phone call so that the District Attorney could state that members of the DA's Office had not been in contact with the Hoffmann family and could allege in the State's Motion for Continuance that they had not been in contact with the Hoffmann family."

c.  "Based on audio recordings of an attorney named Roger Rodriguez provided to me by my clients, I determined that Roger Rodriguez, on behalf of ADA Cox and the District Attorney had been in contact with the Hoffman family since at least the July 1, 2022 hearing."

d.  "Based on everything I learned, the District Attorney's Office wanted a continuance of the Status Hearing in order to allow the State time to prepare and file a motion to recuse the presiding judge, something that former ADA John Briggs later testified to in the hearing on the Motion to Recuse Judge Sam Medrano."

e.  "On August 22, 2022, I spoke with ADA John Briggs. I asked if my clients, the Hoffmann family, were at the meeting and he indicated that they were."

f.  "The Hoffmanns recall DA Yvonne Rosales introducing Roger Rodriguez as a Judge, and then telling those present that Roger Rodriguez and his wife Anne Rodriguez were members of her staff."

g.  "Mr. Briggs informed me that he told Mr. Cox that Mr. Briggs thought the email attributed to the Hoffmann family was a product of Roger Rodriguez. Mr. Briggs's employment with the Office of the District Attorney was terminated three days later."

h.  "On August 26, 2022, I met with Thomas Hoffmann, Alex Hoffmann, and their mother Rosa Maria Valdez Garcia at my office. Each of the family members informed me that Roger Rodriguez and his wife sent the emails in question from Mrs. Valdez's phone."

i.  "The family informed me that the DA's office had a plan to attack Judge Medrano" and others.

j.  "They informed me that they have been continually victimized by Rodriguez who told them that he was acting on behalf of the District Attorney's office."

k.  "[A]t the victims' families meeting back on July 1, 2022, Yvonne Rosales introduced Roger Rodriguez as both a judge and as a member of her staff."

l.  "They also informed me that they began recording Roger Rodriguez both in person and when he called on the telephone due to Rodriguez' aberrant behavior and the fact that he was representing District Attorney Yvonne Rosales."

m.  "DA Yvonne Rosales and Roger Rodriguez promised the Hoffmann children that they would obtain visas for each of them," among other promises.

n.  "The Hoffmanns have repeatedly told me that they are terrified of District Attorney Yvonne Rosales, Assistant District Attorney Curtis Cox, and Roger Rodriguez…. They are in constant fear of retaliation by the District Attorney's office and Roger Rodriguez."

And there was plenty more.

64.  The Ad Litem Report is a matter of public record.

65.  After the Ad Litem Report was filed on October 6, 2022, it became clear and evident that Cox wanted Briggs to sign the false affidavit on August 18, 2022, to cover up the DA's Office's involvement with the August 4, 2022 Email.

66.     When Briggs refused to sign the false affidavit, he was terminated.

67.     A copy of a translated transcription of Rodriguez's August 13, 2022 telephone call with Rosa Maria Valdez Garcia and Thomas Hoffmann was attached as Exhibit 9 to the Ad Litem Report, and it is a matter of public record.

68.     That transcript shows that Rodriguez discussed a plan to force "the bald guy" (i.e., Briggs) to falsely testify that he did not inform the Hoffmann family about the Gag Order:

> RR:     We are, additionally, and here it goes … forcing the bald guy, remember the bald guy?
>
> RMV: Uh-huh.
>
> RR:     To testify under oath that he, yes, never explained or said anything, that could harm you, okay? So, we're forcing everybody to testify before the hearing so that the judge understands that he does not have material to work with. He has nothing, zero. And what will happen after that is an attack against the judge. It's coming.

69.     The plan to force "the bald guy" to falsely testify fell apart when Briggs refused to sign the false affidavit, so the DA's Office terminated him instead.

**Continued Proceedings Before Judge Medrano and Rosales' Resignation**

70.     On November 1, 2022, the El Paso County Attorney's Office gave notice of its intent to pursue removal proceedings against Rosales.

71.     On November 3, 2022, Cox filed a letter indicating his withdrawal from the Crusius Case.

72.     On November 28, 2022, Rosales announced that she was resigning as District Attorney effective December 14, 2022.

73.     On November 30, 2022, proceedings in the Status Hearing on the Gag Order, which began in July 2022, were scheduled to resume on August 18, 2022, and were postponed after Cox filed for a continuance, resumed before Judge Medrano.

74.     Judge Medrano had ordered Rosales and Cox to be present at the November 30, 2022 Status Hearing, but Rosales failed to appear. Instead, she filed for an emergency stay to delay the November 30, 2022 hearing, which the Eighth Court of Appeals denied. Judge Medrano scheduled a show cause hearing for December 1, 2022.

75.     Thomas Hoffman and Rosa Maria Valdez gave sworn testimony corroborating many of the statements in the Ad Litem Report. Judge Medrano made a finding, based on the testimony and evidence presented, that the Hoffmann family did not violate the Gag Order.

76.     Cox, who had resigned from the DA's Office in the days preceding the November 30, 2022 Status Hearing, appeared through an attorney and refused to answer any questions, invoking his rights under the 5th Amendment.

77.     The transcript from the November 30, 2022 Status Hearing is a matter of public record.

78.     On December 1, 2022, the Status Hearing continued. Rosales appeared through her criminal counsel and, like Cox, refused to answer any questions, invoking her rights under the 5th Amendment against self-incrimination.

79.     The attorneys for Cruisus presented a bill of exception, reading the questions they had intended to ask Cox and Rosales about their involvement with the August 4, 2022 Email and subsequent cover up, had they not invoked the 5th Amendment, into the record.

80.     The transcript from the December 1, 2022 Status Hearing is a matter of public record.

81.     Rodriguez and his wife, Anne, evaded subpoenas and did not appear for the Status Hearing.

82.     After Rosales' resignation went into effect, the Governor appointed Hicks as the new District Attorney. Rosales' underlings Ferguson and Al-Hanna subsequently resigned from the DA's Office.

83.     Hicks rehired Briggs with a promotion to Assistant District Attorney, Division Chief (Trial Division) in February 2023.

**Briggs Suffers Monetary Damages and Damages to His Reputation as a Result of His Wrongful Termination**

84.     Following his termination, Briggs took a position as Assistant District Attorney in the Ector County District Attorney's Office in Odessa, Texas. Briggs worked in Odessa, Texas, while maintaining his permanent home in El Paso, Texas, for several months and at a significantly reduced salary.

85.     Briggs returned to the DA's Office in February 2023, after Hicks rehired him.

86.     As a result of his termination, Briggs suffered monetary damages including lost wages, benefits, and costs associated with moving, living, and working in Odessa, Texas, and other out-of-pocket damages. Briggs worked in Odessa for about six months at about half of the salary he was making at the DA's Office, while maintaining his permanent residence in El Paso, Texas.

87.     Briggs also suffered economic damages in the form of legal expenses related to the baseless Grievance filed by Al-Hanna, on behalf of the DA's Office.

88.     Briggs also suffered damages to his reputation, which affected his ability to find new employment.

## V.
## COUNT ONE

## CIVIL ACTION UNDER 42 U.S.C. § 1983 FOR THE DEPRIVATION OF RIGHTS AFFORDED UNDER THE 1ST AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION

89.     Briggs incorporates all allegations in the previous paragraphs as if fully set forth herein.

90.     Briggs is a career prosecutor with almost thirty years of experience as an attorney and over twenty-five years with the DA's Office.

91.     Briggs is highly regarded in the legal profession.

92.     Briggs was an employee of the County of El Paso, working in the DA's Office, when the events that are the subject of this claim transpired.

93.     On July 1, 2022, Judge Medrano issued the Gag Order in the Crusius Case.

94.     On July 1, 2022, following the hearing in the Crusius Case, Briggs informed victim family members about the Gag Order and its implications.

95.     The Hoffman family was present at the victim family gathering where Briggs discussed the Gag Order.

96.     On August 4, 2022, the local media received the August 4, 2022 Email, which purportedly was sent from the email account of Rosa Maria Valdez Garcia and signed by "Alexander Hoffmann Valdez" (the "August 4, 2022 Email").

97.     The "to:" line for the email contained the email addresses used for the DA's Office's press releases and read like it had been written by someone in, or associated with, the DA's Office.

98.     On August 5, 2022, Elise Hoffmann-Taus sent an email stating that her brother Alexander could not have written the August 4, 2022 Email.

99.     On August 13, 2022, Rodriguez disclosed a plan to force "the bald guy" (i.e., Briggs) to falsely testify that he did not inform the Hoffmann family about the Gag Order.

100.    On August 18, 2022, Cox presented Briggs with an affidavit and instructed Briggs to sign it.

101.    Among other statements, the affidavit stated that Briggs had not adequately informed the Hoffmanns of the Gag Order, which was false.

102.    Briggs refused to sign the false affidavit.

103.    At that time, Briggs told Cox that he thought the August 4, 2022 Email came from the DA's Office and Rodriguez.

104.     Briggs refused to participate in an illegal scheme intended to protect Rosales by creating a false narrative to be spun and sold to the Court and the public.

105.     During his tenure with the DA's Office and prior to August 19, 2022, Briggs received favorable performance evaluations.

106.     On Friday, August 19, 2022, one day after Briggs refused to sign the false affidavit, and Monday, August 22, 2022, Briggs's supervisors hastily prepared less than favorable evaluations of Briggs's recent job performance.

107.     Those evaluations were not shared with Briggs and were inaccurate, false, malicious, did not properly reflect Briggs's recent job performance, and were made in bad faith so the DA's Office would have a paper trail to purportedly justify Briggs's termination.

108.     On Monday, August 22, 2022 after the DA's Office hastily prepared the unfavorable performance evaluations for "cover," Briggs was terminated and escorted out of the DA's Office.

109.     This was two business days after Briggs refused to sign the false affidavit and told Cox that he thought the August 4, 2022 Email came from the DA's Office and Rodriguez.

110.     The Hoffman emails and violation of the Gag Order were matters of public concern because they related to the Crusius Case, a mass shooting event in El Paso that garnered local and national attention.

111.     When Cox presented the false affidavit to Briggs and instructed him to sign it, the DA's Office was attempting to force Briggs to speak on a matter of public concern because the affidavit was going to be filed in the Crusius Case and become a matter of public record.

112.     The refusal to engage in compelled speech by an employer on a matter of public concern involves the right to free speech.

113.    The DA's Office was not only attempting to compel Briggs's speech but also wanted Briggs to swear to it under penalty of perjury in order to mislead the court, which would have made Briggs subject to prosecution for perjury.

114.    The affidavit was false. Swearing, or refusing to swear, or being put into the position of having to refuse to swear to a false statement, which would be filed in court to perpetrate a fraud on the court or subject Briggs to prosecution for perjury, was not part of Briggs's job duties.

115.    Briggs's right to refuse to sign the false affidavit is protected by the right to free speech, and alternatively, the right to not speak.

116.    The DA's Office terminated Briggs in retaliation for his refusal to sign the false affidavit, and violated Briggs's rights to free speech under the 1st and 14th Amendments.

117.    Briggs suffered monetary damages and reputational damages as a result of his wrongful and retaliatory termination, including lost wages including back pay, future lost earnings and benefits, out-of-pocket damages, damages to property, mental anguish damages including damages for physical and emotional pain and suffering, and damages for impairment of reputation, personal humiliation, and out of pocket losses.

## VI.
## DAMAGES

118.    Briggs seeks actual damages, compensatory damages, back pay, front pay and/or lost wages in the past and future, all actual monetary damages, mental anguish damages including damages for physical and emotional pain and suffering, damages for impairment of reputation, personal humiliation, and out of pocket losses, liquidated damages, exemplary damages, attorney's fees, expert witness fees, court costs, prejudgment interest, postjudgment interest, and all other and further legal and equitable relief to which he is entitled.

119.     Briggs also seeks punitive damages due to the County of El Paso's reckless or callous indifference towards Briggs's federally protected rights.

120.     Briggs further seeks exemplary damages in view of the facts set forth herein and those that are a matter of public record, which demonstrate outrageous, malicious, and morally culpable conduct.

**VII.**
**JURY DEMAND**

121.     Briggs demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Briggs requests entry of judgment in his favor and against the County of El Paso as follows:

A finding that Briggs's termination was wrongful, retaliatory, and in violation of his 1st and 14th Amendment rights to free speech.

An award of actual damages, compensatory damages, back pay, front pay and/or lost wages in the past and future, all actual monetary damages, mental anguish damages including damages for physical and emotional pain and suffering, damages for impairment of reputation, personal humiliation, and out of pocket losses, liquidated damages, punitive damages, exemplary damages, attorney's fees, expert witness fees, court costs, and pre- and post-judgment interest.

Such other and further relief, whether legal, equitable, or otherwise, to which Briggs may be entitled or which this Court may order.

Dated:  August 22, 2024                    Respectfully submitted,

                                           /s/ Demetrios Anaipakos
                                           Demetrios Anaipakos
                                           Texas Bar No. 00793258
                                           danaipakos@aatriallaw.com
                                           Amir H. Alavi
                                           Texas Bar No. 00793239

aalavi@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

***Counsel for Plaintiff***
***John Patrick Briggs***